Good morning. I have here with me this morning Lee Radford and Maureen Mitchell, who are with me on the briefs, and John Stillman, who is the Assistant General Counsel of FMC Corporation. What I'm going to do this morning in my opening presentation is explain to you what should have happened in this case. That is, what is the path that was open to the tribes in 2006 and remains open to the tribes to prosecute their tribal permit claims against FMC and does not involve any of the errors that are inherent in the path selected by the district court. I'm then going to explain to you why I think the district court's decision is error, the principal points, and then the specific remedy that we seek in this case. I'd like to take about ten minutes in opening and, with your indulgence, reserve the remaining time for my rebuttal. First, what should have happened in this case? What should have happened is the tribes should have commenced proceedings in the tribal forum to require FMC to obtain tribal permits. FMC would have been required to respond to that action by contesting jurisdiction in the tribal proceeding and exhausting its remedies in the tribal forum. At the conclusion of the tribal proceedings, depending on the outcome... Why would it have contested tribal jurisdiction? Because once the tribes initiated that proceeding, if FMC chose not to participate, the tribal proceeding could go forward and the tribes would have the argument that FMC had waived its rights and arguments in the tribal forum. Wouldn't it just litigate in tribal court? That's what would have happened. There would have been litigation in tribal court between FMC and the tribes regarding the permits and the tribes' jurisdiction. At the conclusion of that proceeding, depending on the outcome, either FMC or the United States would have filed an action in federal court on the issue of tribal jurisdiction. When the tribal remedies are exhausted, then there's a complaint filed in federal court. That action would be initiated by a complaint and answer which would frame the party's contentions regarding tribal jurisdiction and the lack thereof. It would be followed by appropriate discovery and pretrial proceedings and, if necessary, a trial on the merits. That's what should have happened. That's a path that remains available to the tribes as we stood here today. Isn't there some litigation in the tribal courts now? Yes, there is. Proceedings are ongoing in the tribal court at this moment. Regarding the permit process? Yes, Your Honor, yes. So why is that any different than what you say should have happened? I'm going to go into that. But the reason it's different is, first, the complaint in this case is it alleges violations of the Resource Conservation Recovery Act by the United States against FMC, and FMC's answer deals with those violations. There's not a word in that complaint regarding tribal jurisdiction or tribal permits. So an essential procedural step when parties such as FMC and the tribes have a dispute is lacking procedural step and protection. What procedural step is lacking in your view? First place, there is no complaint and answer in federal court that frames the issues between the tribes and FMC, and then there are the errors that are inherent in what the district court did, which we specify in our briefs and I'm going to go through. So the court found third-party beneficiary status where that status is expressly disclaimed by FMC in the United States in clear language in the consent decree. I understand your point that you think that the permit process should not have been able to be done through the consent decree. I understand that point, but my problem I'm having is if you're in the tribal court under the permit, you know, rubric anyways, what's the remedy you want that's different than what you're already doing? That's what I don't get. Okay. Let me go through the errors and the problems. Can I short-circuit this a little bit? If we were to hold that the tribes lack standing to attempt to enforce the consent decree, don't all the other issues in your brief go away? That's correct, Your Honor. Okay. Maybe you could concentrate on that point and on the point that Judge Rawlinson is implicitly wrapping up with that, which is then what? What happens to this case and what happens to the tribal case if that argument is correct? What the consent decree has is it has clear language. It says nothing in this consent decree is intended to create any rights in any person, not a party, to the consent decree. Both the parties to the consent decree, FMC and the United States, agree on the meaning and intent of that language. That is, the tribes do not have third-party beneficiary status. The tribes have not cited to the court any case in which similar disclaimer language exists in the consent decree and a person, not a party, has been held to be a third-party beneficiary. The night search decision in McKesson has very similar disclaimer language, and in that case the court held that a person, not a party, could not have third-party beneficiary status. Okay. If we agree with you on that, then this case is dismissed and the tribal case goes on because it deals with the permit issue, which is its own thing. Right. And the reason that it's important that the court honor that language is there's a strong policy, as you know, in the federal courts to encourage settlements. And where the parties agree on the language and the intent of the language, they require certainty. If the court does not honor the language and intent that the parties say it has, the parties to the consent decree, that creates a significant level of uncertainty and it will discourage settlements. So if you find that the tribes are not third-party beneficiaries, then what happens is FMC and the tribes have to ensure that they exhaust remedies with respect to tribal jurisdiction in the tribal forum. At the conclusion of that. What do you mean by that? What do you mean that they have to exhaust jurisdiction? If you're already in the tribal court, what do you mean by saying you have to exhaust tribal jurisdiction? It means that FMC has to present all of its arguments in the tribal forum why jurisdiction does not exist. The tribes have to present their reasons for the existence of tribal jurisdiction, and ultimately the tribal court and the tribal court of appeals would make findings of fact as to the existence of. On what issues? On what issues? On the issue of whether the tribes have jurisdiction to require FMC to obtain the permits sought by the tribes. Why hasn't that been done in the proceedings that are in tribal court now? I guess that's why I'm confused. You know, because you're asking for jurisdiction in tribal court, but you're already in tribal court. So why would that remedy lie as a result of finding that there is no standard? The first problem is that the third-party beneficiary status, once the court does not honor the meaning and intention of the parties, that creates a distance to settlement. The second problem is as the rule announced by the Supreme Court in Strait and its progeny says that the federal court should stay its hand until the issues are exhausted in the tribal forum. That is, we are to honor the tribes' right and obligation to make these decisions. And in this case, I may be wrong. I don't understand what difference it makes either. Your claim in this case is that the district court lacked jurisdiction, period. And if tribal court proceedings had already started or they hadn't started, I don't see how that would affect your argument. How it affects the argument is because the district court made preliminary findings contrary to the rule in Strait. I understand that, but we're the ones looking at it now. I'm sorry? We are the ones looking at it now. So I don't understand how your argument about the inability of an alleged third-party beneficiary to try to enforce the consent decree has anything to do with whether proceedings had or had not begun in tribal court. In a strict sense, I don't think they did. All I'm saying is that if you give us the relief we're asking for, the tribes still have a fully adequate procedure. Okay. You're just trying to make us feel better about what you think is the inevitable outcome, basically. Yeah. I'm just trying to explain that there's a correct procedural path that does not involve the errors made by the district court that permits the tribe to prosecute their claims against FMC. It's not only equally good, it's better because it doesn't involve the errors and it results in a case where the issues are framed in the plaintiffs. I want to ask you another question about another point before you run out of time, and that is the remedy. Your briefing suggests that you want something more than dismissal of the case. Am I missing something there? Let me address the remedy directly. What we're asking as remedy is that this court vacate the district court's March 6, 2006, and December 1, 2006 orders in their entirety. And I think that that would entail a ruling by this court that the tribes are not third-party beneficiaries under the consent decree, a ruling by the court that the consent decree does not authorize the district court to determine tribal permitting requirements, and a ruling by the court striking the district court's preliminary findings on tribal jurisdiction. And the problem that it creates when the district court does what it did in this case is you have a preliminary finding by the federal court that interferes with the tribe's independent determinations on jurisdiction. So what's happening now in the tribal proceedings is everyone's deferring and said, the tribes are saying the federal court already decided this issue and the jurisdictional issues are not being fully dealt with in the tribal forum. Is FMC contesting that the tribal courts have jurisdiction over it? I'm sorry, Your Honor. Is FMC contesting jurisdiction in the tribal courts? FMC is contesting jurisdiction in the tribal court, yes, Your Honor. Over the permit process? We're contesting that the tribes have jurisdiction to require FMC to obtain the building and special use permits that the tribes have asked FMC to obtain. FMC is looking for a pass. You want the federal courts to basically butt out, and you're saying that the tribal courts have no jurisdiction over you. No, Your Honor. I have another question. FMC is not asking for a pass. FMC is asking that the issue of tribal jurisdiction not be litigated under the consent decree but be litigated by the federal court in a federal court action. A separate action. The tribes can bring a separate action. Exactly. Okay, that's fine. Back to paragraph 77. Yes. About how the consent decree is not intended to create any rights or grant any cause of action to any person, not a party, to the consent decree. So is it FMC's position that a sovereign tribal nation falls within the definition of person used in this paragraph? It is, Your Honor. And the reason it is is because the consent decree states that where terms are not specifically defined in the consent decree, that the definitions of the Resource Conservation and Recovery Act will govern and the definitions of the Resource Conservation and Recovery Act define the term person to include tribes. That's covered in both our briefing and in the United States amicus brief. I'd like to, if the Court doesn't have any additional questions at this time, I'd like to reserve my remaining time. You may do so. We'll hear from Mr. Echohawk. May it please the Court. My name is Paul Echohawk. I'm special counsel to the Shoshone-Bannock tribes. With me at counsel table is the tribe's general counsel, Bill Bacon. Also in the courtroom is Kelly Wright, the tribe's environmental program director. In this case, the Shoshone-Bannock tribes, which is Idaho's largest Indian tribe occupying the Fort Hall Reservation, Idaho's largest reservation, obtained a number of benefits in the RCRA consent decree in 1998. Among those benefits was the requirement that FMC allow the tribes access to the FMC site, which is located entirely on the reservation, that FMC provide the tribes documents related to its RCRA work, and in this case, at issue, that FMC be required to obtain tribal land use permits, specifically a special use permit and a building permit. It's noteworthy that the tribes were a major party to the negotiations of the consent decree in this case. The tribes were an intervening party in this case. The tribes are specifically defined in the consent decree and referenced specifically throughout the consent decree. The consent decree provides, in addition to the three rights that I went over, another three specific rights that are unique to the Shoshone-Bannock tribes. They are not government rights. They are not rights that flow generally to the public. They are rights specific to the Shoshone-Bannock tribes. One of those rights is that the consent decree work cannot be closed out unless the tribes are given notice, given an opportunity to inspect the FMC site, and that cannot, the RCRA work cannot finish or complete until the tribes exercise that unique right. Also unique in this case is that in 2000, FMC filed what is really the flip side of the tribes motion in this case. FMC filed a motion seeking declaratory relief that paragraph 8 of the consent decree, which says that FMC is required to get tribal permits, means exactly what it says it means, that FMC be required to obtain tribal permits. FMC in 2000 sought declaratory relief that by applying for the tribal land use permit, the tribal building permit, that it was in compliance with paragraph 8. That was the interpretation of paragraph 8 that FMC adopted. It's one the court accepted, the United States did not object, and the tribes responded to that motion and participated in litigation at that time. Counsel, let me tell you where my issue is in your side of the case and ask for your response. In 1975, the Supreme Court issued its opinion in blue chip, and it said, and rather than try to paraphrase it, it said a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it, even though they were intended to be benefited by it. And our court and some others have waffled and wiggled out from under that a little bit. And in the Hook case, in this circuit, one of the reasons why we wiggled and waffled a little bit was we said, well, the government wasn't a party to the consent decree in Hook, and it was in blue chip, and that really changes it because the government can look out for the interests of those that are intended to be benefited by it. And here we seem to be right in blue chip territory, because your client is not a party to the consent decree. How do we deal with that analytical problem? I agree that the court has identified what I think is really the central issue in this appeal and one of the most difficult. The blue chip case involved an antitrust decree, and they made a general statement that third parties cannot enforce government consent decrees, even though they were intended to be benefited by that. The Ninth Circuit in Hook looked at blue chip and said, well, this statement does not apply to intended third-party beneficiaries. And so there's a presumption, and the Klamath case and the Orff case elaborate on this, but there's generally a presumption that beneficiaries to a government consent decree are incidental beneficiaries unless there's a clear expressed intent of the parties in the consent decree to make them a third-party beneficiary. And under paragraph 77, how can you argue, even if it's ambiguous, even if maybe you can sort of parse person versus this versus that, how can you say that that's a clear intent to allow you to enforce this decree? Well, I think if you look at paragraph 77 by itself, this would be an easy case for FMC. But the Ninth Circuit and the courts have recognized that you look at consent decrees and interpret them as a whole with reference to the whole. And when you look at the whole consent decree, 77 must be interpreted in light of the provisions that define the Shoshone-Bannock tribe specifically as the tribes residing on the Fort Hall reservation. They aren't defined as a person. FMC's argument asks the court to accept a strained definition of the word person that is buried in the RCRA regulations. And to get there, you have to find that person under RCRA includes municipality and then go to a separate portion where municipality includes Indian tribes. And that provision that they're relying on that references RCRA definitions says, unless expressly provided herein. And in the consent decree, the tribes are expressly defined as the Shoshone-Bannock tribes. And so when you read the paragraph 77 that says that there's no intention to create any rights in any person, not a party, if that strict, narrow definition were to be accepted, that would negate the six to eight specific rights that the tribes were given in the consent decree. No, it wouldn't negate them. It would mean that it's up to the United States to enforce them. And that's a little bit different. I mean, obviously your client is frustrated because it does not feel the United States has done that. But it doesn't alter the substantive provisions. It just means that someone else has to enforce them directly under the consent decree. And I can appreciate that question. I think that when you look at paragraph 77 and if you prescribe the meaning to it that FMC asserts, then there are no rights created in the consent decree, no rights to anyone who's not a party. The rights that the tribes assert in this case are not the rights of the United States. They're not the rights of the FMC. They are rights that are specific to the Shoshone-Bannock tribes. And so if paragraph 77 is interpreted by itself, those tribal rights that are listed in the consent decree do not exist for the United States to enforce. Well, I don't understand that argument. Let's say there was one of those particular items that was not being done and you informed the United States and said this is really a problem. Why couldn't they come in and enforce? I don't understand why they couldn't enforce the consent decree in all of its particulars. Well, I think the United States could enforce the tribal rights pursuant to its trust responsibility. The reality in this case is that the United States has not done that. Well, that's what caused this situation to arise, but that frustration doesn't necessarily translate into standing under this agreement. And I guess I'm not really sure I see the difference between this clause and the one in McKesson that we said didn't provide standing. The McKesson case deals with more specific language. The section in McKesson was entitled No Third Party Beneficiaries. It was very specific. It also involved facts where the ---- But the remainder of the clause was almost identical, wasn't it? Yes. It used person versus party in the same way that this clause does. Yes, it was. There are also some important factual distinctions between McKesson, HBOC, and this case. The alleged third party beneficiaries that were making that argument in McKesson were not specifically defined as a unique individual, as the tribes are in this case. In many of these third party beneficiary cases, the courts look at whether the class of persons was merely in mind when the consent decree was being negotiated. I think that's the language used in ORF. Or whether they happened to benefit from the consent decree provisions. And that is a different situation from this case where the tribes are defined specifically and given specific unique independent rights that don't flow from the government, that aren't general to the public, and aren't general to a class of persons. There is an argument that the United States and FMC make that I reference as the fear factor argument, that if the court were to grant the tribes standing and recognize third party beneficiary status, you're opening the door to a whole class of persons that could bring actions under this consent decree in the future. And that simply does not exist under the unique facts of this case. The tribes are the ones who hold those rights. And if the court recognizes that the clear intent of the parties, as read from the consent decree itself, expresses that the tribes are intended to be benefited by the consent decree, then the tribes have standing, and it will only be the tribes that have standing. Let me ask you one question, too, before your clock runs out, and that has to do with remedy. And I want you to assume for the sake of argument, even though I know you vehemently don't concede, that there's a lack of standing here. Opposing counsel said we should do something more than simply return this case to be dismissed. At least that's how I understand his argument. What would your view be of what the bottom line of the opinion would be if we were to agree with FMC's standing argument? If the court agreed with FMC's third-party beneficiary argument, then I think vacating the order would be the minimum. FMC also has asked in its brief for the relief that the court give it some kind of relief to remove itself from the tribal court system. I was a bit confused by the statements that I think conflict with the briefing, because FMC is seeking to stop the tribal court litigation process. They've made that statement in their brief. I think that was why we were asking them questions that were confusing to the panel. But they've asked today orally to vacate two orders, the March and December orders. Well, the December order was appeal. That appeal was dismissed. So the March order is really all that's in front of the court. FMC has said what should have happened in this case. And they are correct that the tribes could have brought an independent tribal court enforcement action. We recognize that. But just because the tribes could have done that doesn't mean, or even if the tribes should have done that, doesn't mean that the tribes had to have done that. The tribes have alternative legal remedies and alternative legal theories that can be submitted in a number of cases. In this case, the tribes chose to do what FMC did in 2000, which is seek an interpretation of paragraph 8 of the consent decree, which clearly requires FMC to apply for and obtain tribal permits. I think it's important to point out that Judge Windmill's order at the district court does not order FMC to do any more than what FMC sought to do in 2000, which is just to apply for the permits. He doesn't make a determination on whether they must get that permit, what will happen in the tribal processes, and allows that exhaustion to take place. It's a very limited order that simply orders FMC to make application. Counsel, if we vacate the March order, does that halt the proceedings in tribal court? It absolutely will. It will halt the tribal proceedings. FMC has indicated that its intention and the relief it seeks from the court is to withdraw its application. And I believe that that is exactly what FMC would do. If the court were to vacate or reverse Judge Windmill's order, they would stop participation in the tribal court and argue that the tribe should start over under a different theory, which would set us back three years. But the December order, I need to help walking through this, obviously. I thought it was the December order which told everybody to go back to tribal court. Am I wrong about that? I may be wrong about that. The March 6th order ordered FMC to make application for the tribal land use permits, the special use permit, the building permit. And it did so. And it did so. Those permit decisions were made in April of 2006. FMC then went back to federal court and asked the district court, it filed a motion to clarify or reconsider the March 6th decision. And that decision was issued on December 1st. FMC filed a notice of appeal of that decision and asked that the cases be consolidated. The United States filed a motion to dismiss that appeal, which the court granted. And so only the March 6th order is before the court on appeal. Okay, but what does the December order do if it stands alone? Your position is if you're going to lose, which you don't want to, I understand that, but that all we could do is undo the March order. That would leave in place the December order floating by itself. What effect would that have as a practical matter? I see that my time is out. Can I answer that? I would appreciate it if you did. Thank you. I think as a practical matter that would need to be addressed. It would probably be addressed by the district court itself. I think the court, without having researched this question, I think the court here probably has the jurisdiction to address whatever orders are necessary to affect its decision. But for the reasons that we've put in our brief and I've explained here, I would urge the court to consider the unique facts of this case and affirm Judge Windmill's order interpreting the consent decree. Thank you very much, counsel. Thank you. Mr. Palumbo, you have a little bit of rebuttal time remaining. Again, we request that this court vacate both the March 6th and the December 1st order because I'll let you finish your because and then I want to know what would happen if we only did one. I think I can answer your what would happen because the parties to this consent decree, both the tribe or both FMC and the United States agree the tribes are not third-party beneficiaries and FMC and the United States agree that the consent decree reserves the permitting process to the local permitting agencies, laws and regulations, and enforcement mechanisms. That said, FMC understands that it has an obligation to exhaust its remedies in the tribal proceeding and it will do so because if it fails to exhaust its remedies in the tribal proceeding, it does so at its peril. That leaves open the question as to what's the best way to take what's happened in the tribal proceedings and ensure that these issues are exhausted, but make no mistake about it, and for the record, FMC understands its obligation to exhaust remedies in the tribal proceeding. Okay. Let me ask some clarifying questions for myself, at least, and my colleagues can jump in if they have additional ones. Am I understanding what you're saying right now, that you will not do what Mr. Echo Hawk fears and force everybody to start over and lose three years of work in tribal court, that you will continue to litigate in tribal court to some kind of conclusion on the merits before entry into district court again on a separate matter? The answer to that is essentially yes, Your Honor, with the reservation that it's outside the record and I can't tell you precisely what happened. I understand that. I just want to understand. But there are steps in the tribal proceedings which we believe have not happened that are required to have happened to exhaust remedies, but we do not seek to start over or do things that have been adequately dealt with in the tribal proceedings. That would be silly and we won't do it. All right. Now, I'm still not clear on what would happen as a technical matter if we had, assuming we agree with your argument and all those assumptions, if we were to vacate the March order but not the December order, would that just go back to the district court to clear it all up or what would happen? Well, I'm sure you understand my position is this, the district court in this case does not have jurisdiction to require FMC to obtain tribal permits. They're not a third-party beneficiary and the permitting provisions of the consent decree do not authorize the federal court to insert itself into what is. . . Okay, but that's already happening. Just go with me on the little bitty question, which is if the March order went away and the December order didn't go away, what would happen when it got back to the district court? Would the court have to say that order has to go away even though it wasn't on appeal because I lack jurisdiction or does it have some force? I mean, just track through with me what would happen. It depends on what this court holds. If the court holds that the tribes do not have standing, as we believe the case is clearly established, the December order goes away, I think. Of necessity, whether we do it or whether the district court does it. Right. But we don't have any authority to do it because it's not pending on appeal before us. If the appeal were dismissed or was dismissed, which it was, then how do we have authority to do anything with the December order? That was not my understanding of the dismissal of the second appeal, but rather that there was not a separate issue, and so both the March 6th and December order are seen as part of the same problem to be dealt with. So your interpretation is that it was dismissed as duplicative rather than it was dismissed dismissed. I think that's correct. Counsel, let me ask you, the standing issue, disregarding the standing issue, doesn't the consent decree require you to get permits or to apply for permits in the tribal court? So the court would have jurisdiction to determine that if the standing issue were not there. That's not our position. It's not the position of the United States. Our position is, and this is explained clearly in the United States amicus brief, what the United States does is if there's any lack of clarity with respect to the permitting provisions, then the court is permitted to look to extrinsic evidence. And what the United States amicus brief tells us that in this decree and many other RFRA and CERCLA consent decrees, this is the very first page of the amicus, these are the provisions we insert, and this is the meaning and intent of those provisions. So the permitting provision does two things. First, it prevents FMC from using this federal court-approved consent decree to argue to local permitting authorities that we're not required to obtain local permits. The reason it's in this consent decree is because under CERCLA super fund, local permitting requirements are exempted. Under RFRA, the statute does not exempt. So the language in paragraphs 6 and 7 is there to prevent FMC from using the consent decree as a sword to avoid local permitting. And then the second part of these provisions, again, explained by the United States, paragraph 76, is what that says is that the consent decree expressly reserves to the local permitting authority authority and responsibility to pursue permitting requirements under its own laws and its own enforcement mechanisms. So even if standing goes away, there is no authority under this consent decree as agreed upon by FMC and the United States with the two parties in absolute harmony as to what those permitting provisions mean. There's no authority in this consent decree for the United States federal court to insert itself. The difficulty I have with that argument is that we generally don't resolve issues based on amicus briefs. So the United States decided not to participate as a party, and it puts us in a difficult position because the arguments that are made by amicus generally do not carry the day in terms of us resolving the cases. And the consent decree clearly says that FMC has to take all actions necessary to obtain required permits. And so regardless of whether or not the tribe has standing to enforce that, that's a requirement under the consent decree that falls on FMC. And so I have difficulty with FMC saying that I don't know what the technical issues are that you have with the tribal procedure, but it looks to me like you're trying to wiggle out of the requirement in the consent decree that you take all actions necessary to obtain the tribal permits. First, I think that what the United States is offering to you is classic extrinsic evidence. What is the use and the practice of the United States, including these specific provisions in RCRA and CERCLA consent decrees? And you have blue chip, which the court's already discussed. There is no case that the tribes can offer to you that gives them third-party beneficiary status. The only case that the tribes cite is Hook. Hook is a contract case, and the Ninth Circuit in Hook found that in the first place, the sole purpose of the consent decree was to provide rules. Counsel, you're getting outside the questions, and you've much used up your time. The court has no further questions. Thank you. Yes, we are aware of that. We are aware of that. We have not ruled on it yet. We appreciate very much the arguments of counsel on this case. It's a very interesting and difficult case, and you've been both very helpful to us. And the case just argued is now submitted.
judges: Graber, Rawlinson, Wright